IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   14-cv-02101-WYD-BNB

MICHELLE MEEKER,

    Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC., d/b/a HERITAGE PARK CARE CENTER;
COLORADO MEDICAL INVESTORS, LLC, d/b/a HERITAGE PARK CARE CENTER;
TOWN OF CARBONDALE, COLORADO;
EUGENE SCHILLING, Chief of the Carbondale Police Department, in his official and individual capacities;
MICHAEL ZIMMERMAN, Police Officer in the Carbondale Police Department, in his official and individual capacities;
ROBERT BAKER, Executive Director of LCCAs Heritage Park Care Center;
JESSICA VARLEY, Human Resources Director of LCCAs Heritage Park Care Center; and
MELANIE HOLMES, Director of Nursing of LCCAs Heritage Park Care Center,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

    THIS MATTER is before the Court in connection with Life Care Defendants' Motion to Dismiss filed September 11, 2014.  The Life Care Defendants include Life Care Centers of America, Inc. ["LCCA"], Colorado Medical Investors, LLC ["CMI"], Robert Baker ["Baker"], Jessica Varley ["Varley"], and Melanie Holmes ["Holmes"].  The motion is fully briefed.  A response was filed on September 25, 2014, and a reply was filed on October 9, 2014.  For the reasons discussed below, the Life Care Defendants' Motion to Dismiss is granted in part and denied in part.

## II.  BACKGROUND

OI July 29, 2014, Plaintiff filed her Complaint and Demand for Jury Trial ["Complaint"] against Defendants LCCA and CMI; Baker, the executive director of Heritage Park Care Center ["Heritage Park"]; Varley, human resources director of Heritage Park; and Holmes, director of nursing of Heritage Park [collectively, the Employer Defendants"].  She also sues the Town of Carbondale, Colorado; Eugene Schilling, Chief of Carbondale Police Department, in his official and individual capacities; and Michael Zimmerman, Police Officer in the Carbondale Police Department, in his official and individual capacities ["Zimmerman"] [collectively, the "Non-Employer Defendants"].

The case arises out of the fact that on October 16, 2013, Plaintiff was taken hostage at gunpoint when she was at work at Heritage Park nursing facility in Carbondale, Colorado. (Compl., ¶¶ 1, 26-65.)  Heritage Park is co-owned by LCCA and CMI.  (*Id.*, ¶¶ 7, 8.)  Plaintiff alleges that the gunman held her against her will at gunpoint, terrorizing her.  (*Id.*, ¶¶ 1, 42-44.)  As she cried and begged for her life, "the man said in a hushed tone that this was a 'drill'", and that he was a Carbondale Police Officer.  (*Id.*, ¶¶ 46-49.)

Plaintiff had no knowledge that this hostage situation was actually part of an "active shooter drill" that was deliberately coordinated and carried out by Defendants. (Compl., ¶ 1.)  The "gunman" was played by Defendant Zimmerman, an on-duty police officer in the Carbondale Police Department.  (*Id.*)  Plaintiff asserts that Defendants intentionally kept the "active shooter drill" secret from the Heritage Park employees and

intentionally failed to disclose to them that such a drill could or would be conducted at the facility. (*Id.*) In so doing, she alleges that the Employer Defendants deliberately intended to cause Plaintiff's injuries and acted directly to bring about her injuries. (*Id.*, ¶ 101.) She further alleges that all Defendants "willfully participated in joint actions in order to deprive Ms. Meeker of her constitutional rights." (*Id.*, ¶ 89.)

Claims One through Six of the Complaint assert federal civil rights claims pursuant to 42 U.S.C. § 1983. These claims include violations of the Fourth Amendment against all Defendants for unreasonable seizure, excessive force, false imprisonment, procedural due process violations, and substantive due process violations. Plaintiff also asserts violations of the Fourteenth Amendment for failure to train and/or supervise by and against the Town of Carbondale and Chief Schilling in his official and individual capacities. Finally, Claims Seven through Ten are state law claims brought against the Employer Defendants and Chief Schilling and Zimmerman in their individual capacities. These claims include civil assault, civil battery, civil false imprisonment and outrageous conduct.

The Employer Defendants assert pursuant to Fed. R. Civ. P. 12(b)(6) that Plaintiff's § 1983 claims against Zimmerman fail as a matter of law because he was not clothed with the authority of the state at the time of the alleged constitutional deprivations. They argue that the state tort law claims fail because they are precluded by the Colorado Workers' Compensation Act. In that regard, the Employer Defendants contend that the exclusive remedy rule precludes tort claims against them because the active shooter drill was inherently connected to Plaintiff's employment and was not

inherently private to Plaintiff.  Further, they argue that the fellow servant doctrine precludes tort claims against Baker, Varley, and Holmes.  Finally, they assert that the intentional tort exception to the exclusive remedy rule does not apply as a matter of law.

Plaintiff asserts, on the other hand, that the Court has jurisdiction over all the claims.  First, she asserts that Zimmerman was acting under "color of law" sufficient to raise a claim under § 1983.  Second, she argues that the state law tort claims are not precluded by the Workers' Compensation Act.  In that regard, she asserts that her claims are based upon intentional torts committed by the employer or the employer's "alter ego".  Plaintiff also asserts that her claims are not the type of intentional torts that "arise" out of her employment, nor were they are in the "course" of her employment. Further, she argues that whether the exclusivity portions of the Workers' Compensation Act bars her state law claims is a question of fact, not appropriately resolved by a motion to dismiss.

II.     ANALYSIS

   A.     Standard of Review

In reviewing a motion to dismiss, the court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim.  *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).  To survive a motion to dismiss under Rule 12(b)(6), the party asserting the claim "must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'"  *Id.* (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation omitted).

Thus, a party asserting a claim "must include enough facts to 'nudge[] his claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

      B.    <u>The Merits of the Parties' Arguments</u>

           1.    <u>The § 1983 Claims Against Zimmerman</u>

I first address Defendants' argument that Plaintiff's § 1983 claims against Zimmerman fail as a matter of law because he was not clothed with the authority of the state at the time of the alleged constitutional deprivations. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage" of a state subjects another the deprivation of constitutional rights may be liable in tort." Key to liability under § 1983 is that the tortfeasor acted under color of law: "the purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161(1992).

Thus, "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1992) (internal quotations omitted). Therefore, "'the only proper defendants in a Section 1983 claim are those who

represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Id.* (quotations and internal quotation marks omitted).  "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'"  *Id.* at 494.

Defendants argue that the *Jojola* case where the plaintiffs failed to meet their burden of proving state action is analogous to this one.  In that case, the plaintiffs' daughter, a fifteen year old, was taken into a vacant classroom by Chavez, the school custodian, and molested.  55 F.3d at 490.  The complaint was devoid of any allegation that Chavez enticed the child into the classroom through the use or misuse of any state authority he possessed.  *Id.* at 494.  Unlike that case, I find that Plaintiff has alleged sufficient facts to demonstrate both that Zimmerman actually possessed state authority (as a police officer), and that he exercised it in relation to taking Plaintiff hostage as part of the active shooter drill.

Specifically, the Complaint alleges that Zimmerman ordered Plaintiff inside a room at gunpoint.  (Compl., ¶¶ 35-42.)  Plaintiff alleges she began to cry and begged the man not to hurt her, telling him she had a young child.  (*Id.*, ¶¶ 43-45.)  At that point, the man told Plaintiff "in a hushed tone that he was a Carbondale Police Officer, that this was a "drill", and that he needed Plaintiff "to get into the room so that he could continue the 'drill.'" (*Id.*, ¶¶ 46-50.)  Plaintiff alleges that "[i]n a state of total shock, confusion, and fear, [she] complied with his order and went into the room, still not knowing if the man was truly a police officer and still scared that she would not leave

there alive." (*Id.*, ¶ 50.) Once inside the room, the man told Plaintiff that he wanted to see how long it would take for other employees to find her and how they would respond to the hostage situation. He also instructed Plaintiff to remain in the room and said that she had to help him "capture" one of her co-workers. (*Id.*, ¶¶ 52-53.) Finally, Plaintiff alleges that at all relevant time periods Defendants were acting under color of state law, and that they conspired with Police Defendants for the purpose of depriving her of her constitutional rights. (*Id.*, ¶ 87.)

The fact that Zimmerman was not dressed in a police uniform is not dispositive. The Tenth Circuit has applied the color of law requirement even to the conduct of off-duty police officers. *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). As the *David* court noted, "[t]he under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty." *Id.* "Instead, one must examine 'the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties.'" I also reject Defendants' argument that Plaintiff cannot simultaneously claim that she believed Zimmerman was a bona fide hostage-taker but at the same time was compelled by his authority as a police officer. Here, accepting the allegations as true and giving Plaintiff the benefit of favorable inferences pursuant to Rule 12(b)(6), Zimmerman identified himself as a police officer to Plaintiff in an attempt to get her into a room at gunpoint as part of the alleged safety drill, and was acting within his duties as a police officer. Thus, I find for purposes of the motion to dismiss that he was acting under color of state law,

and deny Defendant's motion on this issue. *See also Griffin v. Maryland*, 378 U.S. 130, 135 (1964) (private security guard who identified himself as a deputy sheriff "purported to exercise the authority of a deputy sheriff," and was therefore a state actor; "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. . .").

### 2. Whether the State Tort Law Claims Are Precluded by the Workers' Compensation Act

Defendants next argue that Plaintiff's state tort claw claims are precluded by the exclusivity portions of the Colorado Workers' Compensation Act, which "provides exclusive remedies for compensation of an employee by an employer for work-related injury. *Triad Painting Co. v. Blair,* 812 P.2d 638, 641 (Colo. 1991); *see also* Colo. Rev. Stat. § 8-41-301(1)). For the Workers' Compensation Act to apply, the employee must have been "'performing service arising out of and in the course of the employee's employment,' § 8–41–301(1)(b)", and the injury must be "'proximately caused by an injury ... arising out of and in the course of the employee's employment. . . .'" *Id.* This constitutes two separate requirements. *Id.*

The phrase "in the course of" refers to the time, place, and circumstances under which the injury occurred". *Triad Painting*, 812 P.2d at 641. "The 'course of employment' requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job functions." *Id.* Here, Plaintiff alleges that she was on duty during a regularly-scheduled shift when the incident at issue occurred (Compl.,

¶¶ 21, 73-74); thus, the injury occurred within the time and place limits of the employment relation.

However, the parties dispute whether the incident occurred during an activity that had some connection with Plaintiff's job functions. They also dispute the second requirement that the injury arise out of employment. That requirement is narrower than the phrase "in the course of." *Triad Painting*, 812 P.2d at 641. "An injury 'arises out of' employment' when there is a causal relationship between the employment and the injury." *Id*. It must have "'its origins in an employee's work-related functions'" and be "'sufficiently related thereto as to be considered part of the employee's service to the employer in connection with the contract of employment.'" *Id*. at 641-42 (quotation omitted). "[T]he determination of whether an injury arises out of employment is fact specific and is to be resolved by examining the totality of the circumstances." *Id.* at 643.

In the case at hand, Plaintiff alleges that the "active shooter drill" and the circumstances related to that were not part of her job duties or connected to her work-related functions and were "well outside the scope of employment with LCCA" (Compl., ¶¶ 28-29, 105.) Moreover, she alleges that (1) "LCCA Defendants' management, including but not limited to Defendant Holmes, decided ahead of time that Michelle Meeker would be the victim of the 'active shooter drill' and that she would be taken hostage by Defendant Zimmerman during the drill; (2) "[t]here is nothing about the nature of Ms. Meeker's employment with LCCA that either allows or requires LCCA Defendants to intentionally terrorize and place LCCA employees such as Ms. Meeker in fear for their lives under the threat of deadly force" (3) "Ms. Meeker's job duties as a RN

at [Heritage Park] did not place her at any greater risk of injury from a hostage scenario than the risk of injury from a hostage scenario to which the general public is exposed"; (4) [h]ad Defendants not conspired to execute and actually executed the 'active shooter drill' at [Heritage Park] on October 16, 2013, Ms. Meeker would not have suffered the injuries and damages complained of herein"; and (5) Defendants' conduct in arranging for Ms. Meeker to be taken hostage and terrorized by a man armed with a gun lies well outside the scope of employment with LCCA.  (*Id.*, ¶¶ 97, 102-105.)

On the other hand, Defendants argue that the active-shooter drill, which they characterize as a safety drill, which was conducted by the employer on the employer's premises involving an employee during that employee's shift is reasonably incidental to the conditions of Plaintiff's work.  They point to the allegation that, after the completion of the active-shooter drill, Defendant Baker indicated to her that "they [the employer] needed to get the point across that this threat exists in the real world" because Life Care Centers has "had problems with men with guns coming into nursing homes."  (Compl.. ¶ 69; *see also* ¶ 85—Defendant Holmes responding to Plaintiff "that the facility has to run those kinds of drills.")  They assert that this demonstrates the inherent connection between the safety drill and Plaintiff's employment.

I find that this is an issue of fact that cannot be resolved on a motion to dismiss.  As to the "course of employment" requirement, while the Colorado state courts have made clear that the employee need not "be engaged in the actual performance of work at the time of injury in order for the 'course of employment' requirement to be satisfied", *Ventura v. Albertson's, Inc.*, 856 P.2d 35, 38 (Colo. App. 1992), the injury must arise out

of a risk which is reasonably incidental to the conditions and circumstances of the particular employment." *Phillips Contracting, Inc. v. Hirst*, 905 P.2d 9, 12 (Colo. App. 1995) (internal citations omitted).  I cannot find as a matter of law based on the allegations at issue that the active-shooter drill where Plaintiff is alleged to have been purposely chosen to be the hostage and terrorized and put in fear for her life under the threat of deadly force is reasonably incidental to the conditions of Plaintiff's work.

Similarly, as to the "arising out of employment" requirement, I cannot find as a matter of law that the active shooter drill has its origins in Plaintiff's work-related functions and is sufficiently related thereto as to be considered part of Plaintiff's service "to her employer in connection with the contract of employment.'" *Triad Painting*, 812 P.2d at 641-42 (quotation omitted).  Indeed, the Tenth Circuit has indicated that when the exclusivity portions of the Workers' Compensation Act are disputed, the issue is one for the trier of fact.  *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).  That certainly seems appropriate in this case given the highly charged acts at issue in the case which were authorized by the Employer Defendants and directed at Plaintiff.

While Defendants cite the law regarding whether assaults arise out of employment in support of their motion, I find that law is not dispositive.  In determining whether injuries from assaults arise out of employment for purposes of the Workers' Compensation Act, courts look at whether the assaults have an inherent connection with the employment, are inherently private, or are neutral.  *Horodyskyj v. Karanian*, 32 P.3d 470, 475 (Colo. 2001).  If an employee's injuries have an inherent connection with

-11-

the employment or are neutral, those injuries arise out of the employment and the employee is barred from brining a tort claim against her employer.  *Id.*

Here, I cannot find as a matter of law that the active shooter drill and Plaintiff's injuries have an inherent connection with employment, *i.e.,* "emanate from the duties of the job."  *Horodyskyj*, 32 P.3d at 476.[1]  Indeed, Plaintiff alleges that the hostage situation and drill are completely unrelated to her job duties.  Further, I cannot find as a matter of law that the active shooter drill was neutral, *i.e.*, where the injuries "are attributable to neutral and unexplained forces" such as stray bullets or roving lunatics "and are neither personal to either party nor distinctly associated with the employment." *Id.*  Zimmerman was not a neutral or unplanned force as he was retained by the Employer Defendants to conduct the drill.  Further, Plaintiff alleges that the active shooter drill was personal to her as she was targeted to be the hostage.

While assaults that are "inherently private", *i.e.,* those that "have their origin in the private affairs of the claimant or the tortfeasor and are unrelated to their respective work-related functions" are deemed not to arise out of employment, *Horodyskyj*, 32 P.3d at 477, that is also not the situation in this case.  The active shooter drill did not have its origin in the private affairs of Plaintiff or Officer Zimmerman and the other Defendants.  Instead, Plaintiff's employer planned and coordinated it ahead of time, and is alleged to have "had a pattern and practice of instructing its facilities, on a national basis, to

---

[1] Included within this category are assaults originating in arguments over work performance, work equipment, delivery of a paycheck, or termination from work.  *Id.*

conduct" such a drill. (Compl., ¶¶ 90-92, 96-97, 106-07.) None of the scenarios described in *Horodyskyj* appear to apply, leaving this case in a gray area.

Since I have found that the claims are not barred by the exclusivity portions of the Workers' Compensation Act, I need not consider whether the intentional tort exception applies. I question, however, its applicability. An employer may be held liable to an employee for damage claims for intentional torts committed by the employer or the employer's alter ego "if the employer deliberately intended to cause the injury, and acted directly, rather than constructively through an agent." *Ventura*, 856 P.2d at 39. Here, the injury was caused by the acts of Officer Zimmerman, who was retained by the Employer Defendants to conduct the drill.

Finally, however, I grant the motion to dismiss to the extent Plaintiff's state law claims are directed as to the individual LCCA Defendants who were employed at Heritage Park—Baker, Varley and Holmes. Plaintiff alleges that "the LCCA Defendants are vicariously liable" for the actions of their agents. (Compl., ¶¶ 209, 216, 227, 235.) However, employees are barred from maintaining tort actions against either a co-employee or against the employer under the doctrine of *respondeat superior* for intentional torts which arise out of and in the course of employment. *Ventura*, 856 P.2d at 39. In other words, "workers' compensation provides the exclusive remedy for an employee injured by an intentional act of a co-employee [or supervisor] when both were acting within the course of their employment." *Triad Painting*, 812 P.2d at 642; *see also Kandt v. Evans*, 645 P.2d 1300, 1302 (Colo. 1982). Accordingly, the state law claims against Baker, Varley and Holmes are barred on this basis.

III.  CONCLUSION

Based upon the foregoing, it is

ORDERED that the Life Care Defendants' Motion to Dismiss (ECF No.25 ) is **GRANTED IN PART AND DENIED IN PART**.  It is granted to the extent Plaintiff asserts state law claims against Defendants Baker, Varley and Holmes.  It is denied in all other respects.

Dated:  May 5, 2015

                                                BY THE COURT:

                                                s/ Wiley Y. Daniel
                                                Wiley Y. Daniel
                                                Senior United States District Judge