**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02101-WYD-NYW

MICHELLE MEEKER,

    Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC., d/b/a HERITAGE PARK CARE CENTER;
COLORADO MEDICAL INVESTORS, LLC, d/b/a HERITAGE PARK CARE CENTER;
TOWN OF CARBONDALE, COLORADO;
EUGENE SHILLING, Chief of Carbondale Police Department, in his official and individual
    capacities;
MICHAEL ZIMMERMAN, Police Officer in the Carbondale Police Department, in his official
    and individual capacities;
ROBERT BAKER, Executive Director of LIFE CARE CENTERS OF AMERICA, INC.'s
    Heritage Park Center;
JESSICA VARLEY, Human Resources Director of LIFE CARE CENTERS OF AMERICA,
    INC.'s Heritage Park Care Center; and
MELANIE HOLMES, Director of Nursing of LIFE CARE CENTERS OF AMERICA, INC.'s
    Heritage Park Center,

    Defendants.

---

**ORDER GRANTING MOTION FOR PROTECTIVE ORDER**

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendants Life Care Centers of America, Inc. and Colorado Medical Investors, LLC's (collectively, "Life Care Defendants") Motion for Protective Order Pursuant to Fed. Rule Civ. P. 26(c), filed on August 5, 2015 [#143] [1] (the "Motion for Protective Order"). The Motion for Protective Order was referred to this Magistrate Judge pursuant to the Order Referring Case dated July 29, 2014 [#6], the Reassignment dated February

---

[1] For consistency and ease, the court typically cites to the docket and page number assigned by the court's ECF system. However, citations to a deposition transcript reflect the page and line number of the original deposition transcript, as opposed to referring to the page number assigned by the court's ECF system.

10, 2015 [#58], and the Memorandum dated August 5, 2015 [#144]. The court has considered the Parties' filings, relevant portions of the docketed case file, the oral argument of counsel for the Parties at the September 3, 2015 oral argument on the Motion for Protective Order, and the applicable case law. For the following reasons, the court hereby GRANTS the Motion for Protective Order.

## BACKGROUND

According to the Complaint filed by Plaintiff Michelle Meeker ("Plaintiff" or "Ms. Meeker"), Ms. Meeker unwittingly endured a staged hostage taking drill on October 16, 2013, while employed at the Heritage Park Care Center, where she was forced to enter a room by an unfamiliar man wielding what appeared to be a gun. [#1 at ¶¶ 26-60]. The Life Care Defendants are the alleged owners and/or operators of the Heritage Park Care Center. [#1]. As a result of the October 16, 2013 hostage taking drill, Plaintiff asserts numerous claims against the Life Care Defendants under 42 U.S.C. § 1983 for asserted violations of her constitutional rights, and state law claims for (*inter alia*) civil assault and false imprisonment. [*Id.*].

Plaintiff now seeks to take the deposition of Forrest Preston, the founder, sole shareholder, and Chief Executive Officer of LCCA. [#143 at 6]. Plaintiff contends that the deposition should go forward notwithstanding the Life Care Defendants' pending Motion for Protective Order [#143] ("Motion for Protective Order") because Mr. Preston may have personal knowledge of the following three proposed topics of inquiry: (1) LCCA's corporate policies concerning disaster preparedness drills, (2) of his own values and ethics as pertinent to the Life Care Defendants' corporate culture, and (3) of the Life Care Defendants' financial condition. [#152 at 3]. In arguing that there is good cause for issuance of a protective order barring Mr. Preston's deposition, the Life Care Defendants assert that, to the extent any of these proposed

areas of inquiry are relevant to the claims and defenses at issue in this litigation, Plaintiff has failed to make a showing that Mr. Preston has any unique personal knowledge—and that the relevant materials could be obtained by means of less burdensome discovery devices. [#143 at 10-13].

## ANALYSIS

### I.      Legal Standard

Under the Federal Rules of Civil Procedure, the general test of discoverability is whether the materials or information sought by a discovery request "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad standard meant to allow the parties to discover the information necessary to prove or disprove their cases. *Bagher v. Auto-Owners Insurance Company*, No. 12–cv–00980–REB–KLM, 2013 WL 5417127, at *5 (D. Colo. Sept. 26, 2013). Despite the presumptive discoverability of relevant, non-privileged information, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance. *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

The proper scope of discovery is further bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C); *see also Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Indeed, Rule 26(b)(2)(C) allows a court to enter a protective order limiting discovery, on motion or *sua sponte*, if the court determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or

expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(a)(2)(C).

In *Thomas v. International Business Machines*, the Tenth Circuit held that a district court may properly look to the following factors in determining whether to enter a protective order barring the deposition of a high-level corporate official: whether (1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will lead to the discovery of admissible evidence; (3) the deposition is essential to the party's case; and (4) the information cannot be obtained from an alternative source or via less burdensome means. 48 F.3d 478, 483 (10th Cir. 1995).

Subsequent to *Thomas*, courts in the District of Colorado have recognized that entry of a protective order barring such a deposition may be warranted under the so-called "apex doctrine" if any of the following circumstances exist: "(1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship..." *Naylor Farms, Inc. v. Anadarko OGC Co.*, Civil Action No. 11–cv–01528–REB–KLM, 2011 WL 2535067, at *1 (D. Colo. June 27, 2011). The burden of making some showing that the executive indeed has unique personal knowledge may be properly placed on the party seeking to depose the executive. *Id.*[2]

---

[2] Plaintiff urges this court to apply the "well-settled Rule 26(c) standards" in determining whether Mr. Preston's deposition should proceed, rather than the apex doctrine. [#152 at 7]. But in the view of the court, the apex doctrine itself is merely a reflection of a set of standards courts look to in the particular context of depositions of high-ranking executives to determine, in the exercise of the court's discretion under Rule 26(c), whether there is sufficient good cause to limit

**II.     Application to Inquiry Concerning LCCA's Disaster Drill Policies**

Plaintiff contends that discovery to date indicates that "HPCC conducted the active shooter drill on October 16, 2013 because LCCA mandated that such drills be executed," and argues that "Plaintiff is entitled to discover who in the corporate office knew or should have known about the actual planning and execution of that drill and how LCCA's corporate policies, procedures, and training (or lack thereof) dictated the execution of that drill." [#152 at 4]. Plaintiff asserts that "Mr. Preston is uniquely poised to answer those and related questions" because testimony from other LCCA employees has indicated that Mr. Preston is "actively involved" in running LCCA. [*Id.*] (quotation omitted).

But Plaintiff does not even assert (much less make a showing) that Mr. Preston's active involvement in the day-to-day activities of LCCA includes any oversight of disaster preparedness drills at LCCA affiliated facilities. In fact, LCCA points to multiple employees testifying that LCCA's corporate office was not involved in the planning of the disaster preparedness drill at issue. For instance, Robert Baker testified that since he had been employed by LCCA, he had not received any written documents or training on how disaster drills should be conducted. [#143-1 at 114:11-19]. Neil Jensen testified that he had no conversations with the corporate office about approving the drill to which Ms. Meeker was subject, and was not aware of any outline of the drill being sent to anyone at corporate. [#143-3 at 109:11-14, 150:21-23, 151:4-21]. Accordingly, the court finds that Plaintiff has failed to make a showing that whatever personal knowledge (if any) Mr. Preston might have concerning coordination and oversight of disaster preparedness drills at LCCA affiliated facilities is unique to Mr. Preston, and finds that

---

the scope of such depositions, or to enter orders barring them from proceeding entirely. The court accordingly concludes that under either the apex doctrine as set forth in *Naylor Farms*, or the standard articulated in *Thomas*, the conclusion is the same.

under either the standard as set forth in *Thomas* or the apex doctrine, the absence of such a showing provides good cause to preclude Plaintiff from deposing Mr. Preston.

The court additionally finds that a properly noticed Fed. Rule C. P. 30(b)(6) corporate representative deposition would, on the record before the court with consideration to the particular circumstances of the case, be a "more convenient" and "less burdensome" means of obtaining any relevant discovery concerning LCCA's disaster drill policies not yet previously provided in this action. Fed. Rule Civ. P. 26(c)(i).

### III. Application to Inquiry Concerning Mr. Preston's Values and Life Care Defendants' Corporate Ethos

Plaintiff also argues that Mr. Preston has unique knowledge of his own personal values and ethics, which purportedly "set[] the tone" for LCCA's "corporate culture," [#152 at 5], and "in turn dictate HPCC's treatment of employees during disaster drills like the active shooter drill." [*Id.* at 13]. But even if Mr. Preston's values and ethics have some bearing on LCCA's policies as a general matter, Plaintiff's speculation as to the relationship between Mr. Preston's values and the treatment of employees at LCCA affiliated facilities during disaster preparedness drills in particular, is too attenuated and lacking in foundation to provide a basis for allowing discovery on this topic to proceed.[3] After all, discovery "is not intended to be a fishing

---

[3] Plaintiff also contends that Mr. Preston's values and ethics are relevant to the breach of contract claims she has sought leave to amend her Complaint to include. [#152 at 2]. But as Plaintiff notes, the undersigned has recommended that Plaintiff's Motion for Leave to Amend her Complaint be denied, and Plaintiff's fully briefed objections to that Recommendation remain pending before the Honorable Wiley D. Daniel. [#137]. Even if Ms. Meeker is permitted to pursue her breach of contract claims, Plaintiff has failed to establish that Mr. Preston's unique values and ethics are reasonably calculated to lead to admissible evidence on a breach of contract claim which is limited to (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc) (citation omitted).

expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, No. 00-CV-7697-WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) (holding that a showing of relevance requires more than speculation and conjecture).

Because Plaintiff has failed to show that Mr. Preston's own values and ethics are relevant to this action, the court finds that any burden accompanying deposition on this topic would be overly burdensome, and accordingly finds good cause for entry of a protective order as to this line of inquiry. Moreover, to whatever extent LCCA's corporate ethos might be relevant to the subject matter of this action, Plaintiff has failed to establish the requisite nexus between Mr. Preston's unique values and ethics and Ms. Meeker's claims in this action. Consistent with the other topics put at issue by Defendants' Motion for Protective Order, the court also finds that Plaintiff's failure to identify any relevant knowledge likely to be unique to Mr. Preston provides good cause for entry of a protective order.

In addition, the court finds that a properly noticed Fed. Rule Civ. P. 30(b)(6) deposition would provide a "more convenient" and "less burdensome" means of eliciting discovery from LCCA concerning any case-relevant aspects of LCCA's corporate culture and ethos. Fed. Rule Civ. P. 26(c)(i). However, it is unclear on the record before the court that any testimony about the general corporate culture and ethos of LCCA is relevant to whether Defendants violated any constitutional right held by Plaintiff or her state law claims of civil assault, civil battery, civil false arrest/imprisonment, or outrageous conduct.

7

**IV.      Application to Inquiry Concerning Life Care Defendants' Financial Condition**

Plaintiff asserts that as "the sole shareholder of LCCA, a privately-held company that does not publish its financial reports, Mr. Preston also possesses unique and important information about LCCA's financial condition." [#152 at 5]. But Plaintiff makes no effort to specify what the general contours of this "unique and important information" might be, much less explain why there might be reason to suspect such information is unique to Mr. Preston— rather than *e.g.* also available from the LCCA "financial records" Plaintiff concedes she has requested in discovery, but has not yet moved to compel production of. [*Id.* at 12]. Nor does Plaintiff explain why any relevant testimony as to LCCA's financial condition could not be equally well or better developed at a properly noticed Rule 30(b)(6) corporate representative deposition.

Because there has been no adequate showing that Mr. Preston likely possesses unique information concerning LCCA's financial condition, the court finds that there is good cause to bar Plaintiff from deposing Mr. Preston on this topic. Moreover, because it appears that any relevant and discoverable information concerning LCCA's financial could be obtained by other sources likely to be "more convenient" and "less burdensome" considering and weighing the collective interests of the Parties on the record now available to the court (*i.e.*, from corporate records and/or Rule 30(b)(6) corporate designee testimony), the court finds there is good cause on this additional ground to bar Plaintiff from deposing Mr. Preston on this proposed line of inquiry. Fed. Rule Civ. P. 26(c)(i).  During the oral argument, on September 3, counsel for Plaintiff indicated that her Rule 30(b)(6) notice did not include topics directed at LCCA's financial state, and counsel for Defendant indicated that the corporate designee would be prepared to testify about the financial state of LCCA, including Defendant Colorado Medical

Investors LLC ("CMI"), and the relationship between CMI and Defendant Life Care Centers of America, LLC.  Pursuant to this Order, the court grants Plaintiff leave to inquire as to the financial state of Defendants, and their inter-relationship, in sufficient detail so that Plaintiff may understand the overall financial size and financial health of Defendants that may be relevant to Plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons set forth herein, IT IS ORDERED:

(1)    The Life Care Defendants' Motion for Protective Order [#143] is GRANTED; and

(2)    No later than September 10, 2015, Plaintiff's counsel will provide Defendants' counsel with a topic in writing directed at the financial condition and corporate inter-relationship of Defendants.

DATED:  September 9, 2015                BY THE COURT:

                                          s/ Nina Y. Wang
                                          Nina Y. Wang
                                          United States Magistrate Judge