**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02101-WYD-NYW

MICHELLE MEEKER,

    Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC., d/b/a HERITAGE PARK CARE CENTER;
COLORADO MEDICAL INVESTORS, LLC, d/b/a HERITAGE PARK CARE CENTER;
TOWN OF CARBONDALE, COLORADO;
EUGENE SCHILLING, Chief of the Carbondale Police Department, in his official and individual capacities; and
MICHAEL ZIMMERMAN, Police Officer in the Carbondale Police Department, in his official and individual capacities,

    Defendants.

---

**ORDER ON DISCOVERY MOTIONS**

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on three related discovery motions filed by the Parties:

(1) Defendant Life Care Centers of America, Inc.'s Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) ("Motion for Protective Order") [#167] filed on October 6, 2015;

(2) Plaintiff's Motion to Compel LCCA Defendants' Discovery Responses Regarding Financial Information Pursuant to Fed. R. Civ. P. 37(a) ("Motion to Compel Financials") [#192] filed on November 16, 2015; and

(3) The Motion to Designate Depositions of Terry Henry and John Van Veen, Jr. as Confidential and Motion to Restrict Access to Document 192 and its Exhibits ("Motion to Restrict") [#195] filed by the Life Care Defendants on November 17, 2015.

Pursuant to the Order of Reference dated July 29, 2014 [#6], the Reassignment dated February 10, 2015 [#58], and the Memoranda dated October 6, 2015 and November 16, 2015 [#168, #193], these Motions are before this Magistrate Judge. The court has reviewed the associated briefing, the applicable case law, and considered the arguments made by counsel during the informal discovery conferences, and hereby GRANTS IN PART and DENIES IN PART the Motion for Protective Order; and GRANTS IN PART and DENIES IN PART the Motion to Compel Financials; and DENIES the Motion to Restrict as follows.

## BACKGROUND

The background of this case has been discussed in detail in other court recommendations and orders [#123, #158], and therefore, will only be discussed here as it pertains to the Motions pending before the court. Plaintiff Michelle Meeker ("Plaintiff" or "Ms. Meeker") filed her Complaint in this matter on July 29, 2014. [#1]. Ms. Meeker was a registered nurse employed by Defendant Life Care Centers of America, Inc. ("LCCA"),[1] who was an unwitting participant in a hostage drill conducted at her place of employment, Heritage Park Care Center ("Heritage Park"), during which she believed she was in the midst of an actual active shooter event. [#172 at ¶ 1]. As a result of the October 16 drill, Ms. Meeker alleges that she left her position at Heritage Park, and that she "suffered and continues to suffer significant damages, including severe mental and emotional distress." [*Id.* at ¶¶ 1, 75-86].

---

[1] The court refers to Defendant Life Care Centers of America, Inc. and Colorado Medical Investors, LLC ("CMI") collectively as the "Life Care Defendants."

On the basis of these and other allegations, Plaintiff asserts a number of claims under federal and state law: claims under 42 U.S.C. § 1983 for unreasonable seizure, excessive force, and false imprisonment in violation of the Fourth Amendment of the U.S. Constitution against all Defendants; a § 1983 claim under the Fourteenth Amendment for a violation of procedural due process against all Defendants; a § 1983 claim under the Fourteenth Amendment for a violation of substantive due process against all Defendants; a § 1983 claim under the Fourteenth Amendment for failure to train and/or supervise against Defendant Town of Carbondale ("Carbondale") and Defendant Eugene Schilling ("Defendant Schilling" or "Chief Schilling"); a claim for civil assault against the Life Care Defendants, Defendant Schilling, and Defendant Michael Zimmerman ("Defendant Zimmerman" or "Officer Zimmerman"); a claim for civil battery against the Life Care Defendants, Defendant Schilling and Defendant Zimmerman; a claim for civil false arrest/imprisonment against the Life Care Defendants, Defendant Schilling and Defendant Zimmerman; a claim for outrageous conduct against the Life Care Defendants, Defendant Schilling, and Defendant Zimmerman; and willful and wonton breach of contract against the Life Care Defendants [#172].[2]

In her Amended Complaint, Plaintiff alleges that the Life Care Defendants "deliberately intended to cause Ms. Meeker's injuries, and acted directly to bring about her injuries." [*Id.* at ¶ 101]. As part of her claim for willful and wonton breach of contract, Ms. Meeker seeks "all damages allowed by law, including but not limited to exemplary and treble damages, as well as the maximum increase of such damages for the continued behavior as allowed by law." [*Id.* at ¶ 243]. To that end, Plaintiff served discovery regarding both the Life Care Defendants' prior

---

[2] By Order dated May 5, 2015, the court dismissed the state law claims brought against the individuals—Defendants Baker, Varley, and Holmes—holding that Workers' Compensation benefits were the only remedy available to Plaintiff for injuries caused by co-workers or superiors in the course of employment. [#120].

conduct of similar drills, and the financial relationship and condition of Defendants. The court has conducted repeated informal discovery conferences related to the adequacy of Defendants' disclosures. [#156, #166, #194].

On October 6, 2015, Defendant LCCA[3] filed its Motion for Protective Order, contending that having to perform a company-wide search of all emails to determine whether responsive emails related to the disaster drills exist was overly burdensome. [#167 at 3-4]. LCCA further asserted that the 2013-2015 LCCA Consolidated Financial Statements that were previously produced constituted the "full financial information" that the court ordered and no further production was necessary because the excluded information related to Variable Interest Entities ("VIEs"), whose assets and liabilities, the Life Care Defendants contend, would not be considered the Life Care Defendants' assets for the purposes of punitive damages. [#167, #166]. Plaintiff opposed the requested protective order, arguing that it was willing to limit the search for electronic mail related to the disaster drills to individuals on the safety committee and management employees of those facilities, that LCCA had failed to establish that producing such e-mail was overly burdensome, that the financials of the VIEs were not relevant, and that the court had already ordered the Life Care Defendants to produce such information and LCCA should not be permitted to re-argue relevance at this juncture. [#173]. LCCA replied, arguing that the search to discover whether any responsive emails exist *itself* was unduly burdensome, that the potential for any relevant information was "marginal," and that the Life Care Defendants had already admitted that its facilities perform unannounced emergency disaster drills. [#183 at 5-8]. LCCA further contended that the court already ruled that Plaintiff was not entitled to discovery on this issue, citing the court's order dated July 20, 2015. [*Id.* at 3].

---

[3] While referring to itself as the "Life Care Defendants," the Motion for Protective Order appears to be filed only on behalf of Defendant LCCA, not Defendant CMI.

On November 16, 2016, Plaintiff moved to compel further disclosure of financial information, based on the deposition testimony of LCCA's corporate designees, arguing that the excluded information about the VIEs was relevant. [#192]. Specifically, Plaintiff contends that Terry Henry testified that the VIEs account for over $1 billion of LCCA's total net operating revenue. [*Id.* at 3, citing #192-1 at 48:20-53:24, 94:25-96:9.] Ms. Meeker further points to Mr. Henry's testimony that the Life Care Defendants' auditors audit financial statements that include the VIE income, including that of CMI. [*Id.* at citing #192-1 at 44:7-10]. Ms. Meeker also seeks disclosure of financial information of LCCA's sister corporation, Century Park Incorporated, and the underlying financial records for "LCCA Corporate." [*Id.* at 4]. The Life Care Defendants resist production, again arguing that the assets of the VIEs are not relevant because "[t]he assets of the VIEs that are consolidated are not considered general assets of the reporting company, and the liabilities of the VIEs are not considered general liabilities of the reporting company, except to the extent of debt the reporting company has guaranteed for the VIE." [#196 at 2]. The Life Care Defendants also contend that discovery into the VIEs and LCCA's sister corporations are not relevant because they are not defendants, and Plaintiff has failed to establish the elements to allow for piercing of the corporate veil. [*Id.* at 2-4]. Plaintiff replied by arguing that the information about the financial arrangements and the corporate organization between LCCA, Century Park, CMI, and other VIEs is necessary not only for her demand for punitive damages, but also to establish the interconnections between the entities "to show the link between LCCA and these facilities and LCCA's knowledge of, and control over, those drills." [#199 at 4].

Finally, the Life Care Defendants seek to restrict Plaintiff's Motion to Compel Financials and its exhibits [#195], contending that they designated certain information as Confidential under the Protective Order, and Plaintiff's motion and exhibits reflect confidential financial

5

information that should be protected from public disclosure. Plaintiff has not filed a response to the Motion to Restrict, but the Rule 7.1 Statement of Conferral included in the Life Care Defendants' Motion indicates she opposes the relief sought [#195 at 2], as does the Notice of Restricted Filing. [#202]. The court considers each of these Motions in turn.

## ANALYSIS

### I.     Standard of Review

#### A.     Discovery

In considering whether information is subject to discovery, the court exercises its discretion while balancing the interests and burdens of all parties. The Federal Rules provide for discovery "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).[4] The recent amendment to Rule 26 restores the "proportionality factors to their original place in defining the scope of discovery." *Id.* at advisory committee's note to 2015 amendment.

Usually, it is the burden of the party seeking further answers to prove that that the answers of the resisting party are incomplete or otherwise deficient. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir.1976) ("appellees had the burden of proving the answer to their

---

[4] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended, effective December 1, 2015. Pursuant to 28 U.S.C. § 2074(a) and the Order of the Supreme Court dated April 29, 2015, the amendment shall govern all civil cases commenced after December 1, 2015 and "insofar as just and practicable, all proceedings then pending."
*See* http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.

interrogatory was indeed incomplete")); *see also Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986) (the burden of proof lies with the proponent of additional discovery to prove that the answers before the court are incomplete, inadequate, or false). However, in this case, the Life Care Defendants do not assert that they have searched and determined they do not have additional, responsive documents. Rather, the Life Care Defendants contend that even engaging in such a search with respect to electronic mail would be unduly burdensome. Generally, a party seeking a protective order bears the burden of establishing good cause, in a particularized manner rather than by simply asserting generalities. *See Cartel Asset Mgm't v. Ocwen Financial Corp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721, *10 (D. Colo. Feb. 8, 2010). Therefore, to the extent the Life Care Defendants aver that the burden of producing additional information is excessive, they must produce evidence of the burden involved. *Id.* The court then will consider the alleged burden in light of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *zvelo, Inc. v. SonicWALL, Inc.*, No. 06-CV-00445-PAB-KLM, 2013 WL 2338352, at *4 (D. Colo. May 29, 2013). However, the Court is not obligated to "make formal and explicit findings regarding each of the[se] factors." *Id.* (citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1194 (10th Cir. 2009)).

      B.     **Motion to Restrict**

With respect to discovery materials filed in proceedings before this court, the Supreme Court acknowledged a common-law right of access to judicial records in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid

7

secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

Accordingly, documents filed with this District are presumptively available to the public, and the burden is on the party seeking restriction to justify such relief. D.C.COLO.LCivR 7.2(a). A showing of compelling reasons for restriction of public access is necessary, as it is critical that the public be able to review the factual basis of this court's decisions and evaluate the court's rationale so that it may be confident that the court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814. A party seeking to restrict access may not simply point to confidentiality designations with respect to materials produced in discovery and/or state that it "believes" certain materials are competitively sensitive (without evidentiary support) in an attempt to secure wholesale sealing of entire legal briefs and accompanying exhibits. Whether a party has designated a document "confidential" or even "attorney's eyes only" is not dispositive, and may not even be helpful, to the court's analysis.

Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing. It must: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate. D.C.COLO.LCivR 7.2(b)(1)–(4). Such showing must be

articulated in a specific manner; generalities about injury and the lack of alternatives will not suffice.

## II. Defendant's Motion for Protective Order

### A. E-Mails Regarding Other Hostage Drills

As discussed above, LCCA does not argue that information about its conduct or other hostage-type drills would not be relevant, *i.e.*, reasonably calculated to lead to admissible evidence. Rather, it contends that the mere search to determine whether there would be responsive emails is overly burdensome, and the potential to yield responsive documents is "marginal." LCCA further argues that even with the limitation to the safety committee and management employees at the facilities as offered by Plaintiff, the electronic search for emails would still be unduly burdensome. [#183 at 6]. Based on these reasons, LCCA declined to even attempt to perform a search.

This court is troubled by LCCA's position, and respectfully declines to adopt it. The Federal Rules of Civil Procedure, and the controlling case law of this Circuit and District, require that counsel and parties make a reasonable inquiry before responding or objecting to discovery. Fed. R. Civ. P. 26(g). Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. *Cartel Asset Mgmt.*, 2010 WL 502721, at *10. From the record before the court, it appears that the LCCA Defendants failed to undertake the requisite inquiry before responding or objecting to discovery.

As an initial matter, the LCCA Defendants affirmatively represented that "the only hostage drill that has ever taken place at any LCCA facility was that occurring at the Carbondale, Colorado facility on October 16, 2013." [#173-7 at 3]. That assertion is patently wrong. *See* [#173-5, #173-12]. At best, this misstatement reflects a failure on the part of the LCCA

9

Defendants and their counsel to reasonably investigate whether there were other similar drills. In this same vein, the court fails to see how LCCA can reasonably determine that the potential to yield responsive documents is "marginal," when it has failed to undertake any type of search *at all.* For instance, even in the face of specific deposition testimony of its employee, Jessica Varley, that she emailed Robert Baker notes on the hostage drill [#173-9 at 193:12-194:18] and testimony from Officer Zimmerman that he had email contact with Cathy Ortiz at Heritage Park [#173-10 at 121:16-17, 122:11-25], it appears that LCCA has simply and unilaterally determined that it need not undertake any search to determine whether it could find such emails. Indeed, it does not appear that LCCA even asked the individuals deposed to search for responsive emails on their respective computers. *See* [#173-11 at 177:9-24]. This effort does not comport with the principles of discovery.

LCCA further relies upon the Declaration of Brad Thompson, the Director of Information Technology, to assert that any search would be overly burdensome. [#169]. Yet Mr. Thompson's testimony regarding how burdensome it would be to search all 7,500 individual email accounts residing on 1 of 20 different Exchange mail store databases is inapposite. Plaintiff has limited her request to members of the safety committee; specific LCCA employees have been identified as exchanging emails about the drill; and LCCA has produced information that reflects the type of drill, the facility, and the date of such drill in this action [#173-5]. Mr. Thompson does not address what specific burden LCCA would suffer by undertaking this more limited search, or even a more limited search related to the drills that appear to be undeniably similar by description to the one endured by Ms. Meeker, *i.e.*, "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray – intruder in the

building with weapon," "man with gun hostage situation." *See* [#173-5 at 1, 2, 5, 6]. Instead, LCCA relies on attorney argument to contend that any search would still be too burdensome. [#183 at 6]. But in doing so, LCCA offers the court no concrete facts about efforts or results, instead relying upon statements like "any one email address *could* contain emails on several different databases, thus requiring a search of multiple databases," and "each individual component search *could* take over an hour to complete and there is approximately 2 hours of administrative work and data processing per search request." [*Id.* (emphasis added)]. These speculative statements are simply insufficient to carry LCCA's burden or to persuade this court that there is an actual, identifiable burden that can be weighed against the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Finally, the court addresses LCCA's suggestion that it already declined to order LCCA to produce any information regarding drills of a related nature. Contrary to LCCA's argument, the court declined to compel the LCCA Defendants to respond to Plaintiff's Interrogatory No. 5, and Requests for Production Nos. 5, 8, and 9 because they requested "all drills or safety security training exercises at any LCCA facility" over a decade, and framed as such, were facially overbroad and potentially swept in incidents that were not proximate in location, time, or of the "same type." [#141 at 9]. The court further declined to reframe these discovery requests on behalf of Plaintiff. [*Id.* at 10.] The court, however, made no finding with respect to any reframed discovery requests. [*Id.*]

Here, additional discovery has disproven LCCA's prior representation that Ms. Meeker has not limited her discovery requests to emails associated with the safety committee and management officials. This court further limits them to a narrow subset of "other incidents of

11

the same type," as contemplated by the Advisory Committee Notes to Federal Rule 26(b)(1) (2000) and (2015 "The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were "other incidents of the same type, …")), namely those which involved hostage taking.

Therefore, this court **ORDERS** as follows:

(1)   LCCA will conduct searches of emails for responsive documents for each of the members of the safety committee and the three management employees of each facility (as identified by Plaintiff by name or title), as well as Jessica Varley and Cathy Ortiz, and specifically for relevant emails about any drill described in [#173-5] as  "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray – intruder in the building with weapon," and "man with gun hostage situation," and produce any responsive documents **no later than December 24, 2015**; and

(2)   The court reserves ruling on whether sanctions are appropriate upon the filing of an appropriate motion by Plaintiff,[5] citing to specific discovery produced in response to this Order; and the LCCA Defendants are specifically advised that failure to comply with this court's order or engage in discovery in a good faith manner may lead to sanctions, including but not limited to default judgment.

---

[5] Local Rule 7.1(d) prohibits a party from seeking relief in a response.  D.C.COLO.LCivR 7.1(d). Based on the record before it, the court is disinclined to award sanctions at this juncture but reserves ruling specifically.

B.     **Financial Documents**

It is undisputed that Plaintiff seeks the financial information of the LCCA Defendants for purposes of supporting a claim for punitive damages, as confirmed by Plaintiff's counsel during the last informal discovery conference. In addition, Plaintiff contends she requires information about the corporate relationship between LCCA, CMI, Century Park Incorporated, and the various VIEs in order to understand the control and knowledge exerted by LCCA over such entities and to avoid any argument by the LCCA Defendants that the wrong corporate entities are sued. [#199 at 3-5].

The financial condition of the LCCA Defendants is generally discoverable as relevant to the issue of punitive damages. *See Scavetta v. King Soopers, Inc.*, No. 10-CV-02986-WJM-KLM, 2012 WL 3545278, at *3 (D. Colo. Aug. 16, 2012). CMI is undisputably a VIE. Mr. Henry testified that the net revenue including the VIEs would be about 2.1 or 2.2 billion. [#192-1 at 52:18-23]. Publicly available information indicates that "Life Care Centers of America's" revenue as of October 2014 was $2.9 billion. Nevertheless, there is no indication that the balance sheets produced and filed at [#196-1] include any information about CMI, which is a defendant in this case. Nor does it appear that the Life Care Defendants have produced any documents to demonstrate what percentage of VIE income is attributable to CMI.

While the LCCA Defendants insist that such revenue cannot be imputed to the named defendants for purposes of punitive damages [#196 at 1-2, #167 at 7-8], they fail to explain how the already produced documents account for any revenues associated with CMI. Particularly if LCCA intends to take the position that the entire $2.9 billion that is reported in the public media is not attributable to LCCA and CMI in this action, Plaintiff must be able to discover how the assets are divided between LCCA on one hand and CMI and the other VIEs on the other. In

addition, the LCCA Defendants have already created financials that reflect the net operating income including the VIEs which presumably reflects financial information regarding CMI. [#192-1 at 46:4-16, 88:16-22].

The court is not persuaded, however, that Ms. Meeker's demand for punitive damages warrants discovery of all documents sought, including compensation to Forrest Preston, financial information related to Century Park Incorporated, and/or additional supporting documentation such as any/all financial agreements between the entities. As an initial matter, Mr. Preston is not personally named as a defendant to this litigation, and Ms. Meeker concedes that she is not attempting to pierce the corporate veil**.  [**#199 at 2]. Plaintiff does not explain how Mr. Preston's compensation is relevant to her claim for punitive damages.  Nor are Century Park Incorporated or LCCA Corporate named defendants, and the court does not conclude, on the record before it, that Plaintiff has established that the financial condition of these separate entities—whether or not related to or held by Mr. Preston—is relevant to her claim for punitive damages against LCCA and/or CMI.  There is no current defense that the LCCA Defendants are unable to pay if punitive damages are assessed against them.  [#180].  There is no obligation on the part of Ms. Meeker in presenting the financial condition of the Life Care Defendants for the purposes of punitive damages to be able to present details of how such Defendants handle their finances. And despite the LCCA's conduct through discovery in this matter, this court does not find on the record before it that the LCCA Defendants are shifting assets away from LCCA, which is a defendant to this action, to circumvent Ms. Meeker's punitive damages award.  Therefore, to balance the competing concerns of the Parties in this action, and in order to avoid any possibility that demands for financial information are sought for unwarranted purposes, this court will not

14

compel such production at this time. *Cf. Koch v. Koch Indus., Inc.*, No. 85-1636-C, 1992 WL 223816, *10 (D. Kan. Aug. 24, 1992).

Accordingly, I find that the consolidated financials including the VIEs are reasonably calculated to lead to admissible evidence about CMI and its finances and **ORDER** that consolidated financials that include the VIEs be produced, no later than **December 11, 2015**, for the years of 2013 to the present. In addition, it appears that the earnings associated with LCCA Corporate should already be reflected in the consolidated financials. *See* [#192-2 116:21-117:8]. Further production will not be required at this time.[6]

### C. Organizational Documents

Finally, Ms. Meeker seeks organizational documents because she is "concerned that Defendants may ambush her at trial by arguing that she has sued the wrong entities." [#199 at 4-5]. In their Answer to the Amended Complaint, the LCCA Defendants do assert "The Complaint may have failed to name an indispensable party." [#180 at 41]. To avoid any issue in the future with respect to whether the appropriate entities have been named, this court **ORDERS** the

---

[6] Plaintiff contends that under Rule 612 of the Federal Rules of Evidence, LCCA should be compelled to produce LCCA Corporate's separate financial statements. The court notes that it appears that Mr. Henry testified that he reviewed the financial statements of LCCA Corporate "a little bit," in anticipation of the depositions. [#192-1 at 87:10-17]. Courts considering whether to require production of documents consulted by deposition witnesses have set forth three conditions that a party must meet before production of documents used by a witness prior to testifying: (1) the witness must use the writing to refresh his memory; (2) the witness must use the writing for the purpose of testifying; and (3) the court must determine that production is necessary in the interests of justice. *See ICE Corp. v. Hamilton Sundstrand Corp.,* No. 05-4135-JAR, 2007 WL 4334918, at *4 (D. Kan. Dec. 6, 2007). "In addition, the party seeking such documents must show that the documents 'actually influenced the witness' testimony.'" *Id.* In reviewing the excerpts of Mr. Henry's deposition as provided by Plaintiff, this court does not conclude that Mr. Henry used the LCCA Corporate financial documents for the purpose of testifying, or such documents influenced Mr. Henry's testimony. The court further concludes that based on the record before it, production is not necessary at this time in the interests of justice, particularly in light of the required production of additional consolidated financials relating to LCCA and CMI, the two named Defendants in this action.

LCCA Defendants to produce organizational charts or other documents sufficient to demonstrate the ownership and management structure of Heritage Park Care Center, including but not limited to Heritage Park Operations, LLC., from 2013 to the present, no later than **December 11, 2015**.

### III.     Motion to Restrict

The LCCA Defendants have moved to restrict Plaintiff's Motion to Compel Financials [#192] and the associated exhibits. [#195]. The LCCA Defendants have also filed their Response to the Motion to Compel Financials and exhibits as Level 1 Restricted. [#196] They have not filed a motion to restrict, but rather a Notice of Restricted Filing, based on "these exhibits have been deemed confidential under the Protective Order in this case." [#197]. Then in support of her Reply, Ms. Meeker filed [#200] as restricted, and a Notice of Restricted Filing [#202], stating that she has filed the deposition transcript of Mr. Van Veen as restricted "until such time as the Court rules upon Defendants' Motion." [*Id.* at 1].

In determining whether to allow restriction of any of these filings or documents, this court weighs the interests of the public, which are presumptively paramount, against those advanced by the parties. *See JetAway Aviation LLC v. Board of County Comm'rs of County of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014). It is unequivocal, under both D.C.COLO.LCivR. 7.2(c)(2) and the Tenth Circuit's controlling case law, that a party's designation of a document as "confidential" is insufficient to require its restriction from public access. *Id.*; *Avantgarde Surgical Inc. v. Rocky Mountain Hosp. & Medical Serv., Inc.*, Civil Action No. 08-cv-02103-MSK-CBS, 2008 WL 5335777, at *3 (D. Colo. Dec. 18, 2008). In addition, a party's generalized assertions that information should be restricted are insufficient. Rather, the party seeking to restrict records "must articulate a real and substantial interest that

16

justifies depriving the public access to the records that inform our decision-making process." *Id.* (citations omitted).

The Life Care Defendants contend that they "are privately owned companies who are not required to make their financial records public. Such a disclosure could adversely impact business dealings and affairs." [#195 at 5-6]. The court finds such a statement both perfunctory and speculative, and as such, insufficient to support restriction of any of the documents. Further, the Life Care Defendants' statement that "redaction is not practicable" is internally inconsistent with its statement that the Life Care Defendants identified specific portions of each deposition they were seeking to identify as confidential, [*id.* at 4], as well as the court's own review.

In light of the Life Care Defendants' failure to carry their burden, the court is under no obligation to undertake an independent review of the documents to determine whether any of the now-restricted documents should be maintained as such. Nevertheless, the court has reviewed Plaintiff's Motion to Compel Financials and its exhibits [#192], as well as the LCCA Defendants' Response and exhibits [#196], and Mr. Van Veen's deposition [#200]. In doing so, the court finds there are a number of points worth mentioning. First, as an initial matter, this court is disinclined to restrict briefing filed by the Parties. As the Tenth Circuit has specifically underscored, "parties should not routinely or reflexively seek to seal materials upon which they predicate their arguments for relief…" *See Lucero v. Sandia Corp.*, 495 F. App'x. 903, 913 (10th Cir. 2012). Next, the court notes the overbreadth of the Life Care Defendants' request to restrict, given the fact that some of the exhibits are unequivocally publicly available. *See e.g.*, [#192-4]. The Life Care Defendants further articulate no basis, and the court is unaware of any, that would warrant the restriction of communications between opposing counsel that reflect no confidential information. *See e.g.*, [#192-3]. Furthermore, the Life Care Defendants have

17

requested the court to evaluate certain documents, such as testimony from its corporate representatives, to support their own positions.  "Once a party asks the Court to consider a document in resolution of an issue, the public has an interest in such document.  Absent a showing of compelling reasons that override the public's interest, documents filed with the Court should not be sealed from public view."  *Advantgarde Surgical,* 2008 WL 5335777, at *3.   In reviewing the testimony of the corporate designees, the court finds it difficult to believe some of the information is even confidential, *e.g.*, for what reasons LCCA uses aircraft.  [#196-3 at 101:2-10].  Accordingly, this court DENIES the Life Care Defendants' Motion to Restrict [#195].

With respect to the LCCA Defendants' filing of their Response as a restricted document on November 18, 2015 [#196], Local Rule 7.2(e) provides that "[i]f a document is filed as a restricted document without an accompanying motion to restrict, it shall retain a Level 1 restriction for 14 days.  If no motion to restrict is filed within such time period, the restriction shall expire and the document shall be open to public inspection."   The fourteen days lapsed yesterday, and no motion to restrict has been filed.  Accordingly, the court ORDERS that the restriction on [#196] be lifted.

As for [#200], the 14 days to file a motion to restrict has yet to lapse.  The court expects that the Parties will account for the controlling case law, and the rulings made in this Order, in evaluating whether it is appropriate to file a motion to restrict.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Defendant Life Care Corporation of America, Inc.'s Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) ("Motion for Protective Order") [#167] is **GRANTED IN PART and DENIED IN PART**;

(2)     Plaintiff's Motion to Compel LCCA Defendants' Discovery Responses Regarding Financial Information Pursuant to Fed. R. Civ. P. 37(a) ("Motion to Compel Financials") [#192] is **GRANTED IN PART and DENIED IN PART**;

(3)     Defendant Life Care Corporation of America will **SUPPLEMENT** its production, consistent with the direction in this Order;

(4)     The Motion to Designate Depositions of Terry Henry and John Van Veen, Jr. as Confidential and Motion to Restrict Access to Document 192 and its Exhibits ("Motion to Restrict") [#195] is **DENIED**;

(5)     The Clerk of the Court is **DIRECTED to UNRESTRICT** [#196, #196-1, #196-2, #196-3, #196-4].

DATED:  December 4, 2015                              BY THE COURT:

s/ Nina Y. Wang
United States Magistrate Judge