## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02101-WYD-NYW

MICHELLE MEEKER,

      Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC., d/b/a Heritage Park Care Center,
COLORADO MEDICAL INVESTORS, LLC, d/b/a Heritage Park Care Center,
TOWN OF CARBONDALE, COLORADO;
EUGENE SCHILLING, Chief of the Carbondale Police Department, in his official and
individual capacities; and
MICHAEL ZIMMERMAN, Police Officer in the Carbondale Police Department, in his official
and individual capacities,

      Defendants.

---

## ORDER ON DISCOVERY MOTIONS

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Plaintiff's Motion for Sanctions for LCCA

Defendants'[1] Failure to Comply with this Court's Order on Discovery Motions [Doc. 204]

Pursuant to Fed. R. Civ. P. 37 [#221, filed Dec. 24, 2015] and Defendants Life Care Centers of

America, Inc. and Colorado Medical Investors, LLC's Motion for Extension of Time [#258, filed

Feb. 23, 2016] (collectively, "Motions").  The court considers these Motions pursuant to the

Order of Reference dated July 29, 2014 [#6], the Reassignment dated February 10, 2015 [#58],

the Memorandum dated December 29, 2015 [#222], and the Memorandum dated February 24,

---

[1] The court refers to Defendant Life Care Centers of America, Inc. and Colorado Medical Investors, LLC ("CMI") collectively as the "Life Care Defendants."  However, the court notes that the Plaintiff refers to the same two Defendants as the "LCCA Defendants" in her briefing. References in this Order to the "LCCA Defendants" are generally direct quotations from Plaintiff's briefing; both terms refer to the same two entities.

2016 [#259]. Having reviewed the associated briefing and the applicable case law, the court rules on the pending Motions as follows.

## BACKGROUND

The relevant factual background of this case is set forth in this court's Recommendation on Plaintiff's Motion to Strike LCCA Defendants' New and Untimely Legal Defenses [#189], which is docketed concurrently with the present Order, as well as other orders and recommendations. For the sake of efficiency, the court sets forth only the circumstances most relevant to Plaintiff's Motion for Sanctions for LCCA Defendants' Failure to Comply with this Court's Order on Discovery Motions [Doc. 204] Pursuant to Fed. R. Civ. P. 37 [#221], and Defendants Life Care Centers of America, Inc. and Colorado Medical Investors, LLC's Motion for Extension of Time [#258].

Plaintiff Michelle Meeker ("Plaintiff" or "Ms. Meeker") alleges that she participated in a hostage-taking drill in which she unwittingly assumed the role as the hostage. As a result of the harm caused by believing that she was actually a hostage being held at gunpoint, Plaintiff asserts a number of claims under federal and state law: (1) claims under 42 U.S.C. § 1983 for unreasonable seizure, excessive force, and false imprisonment in violation of the Fourth Amendment of the U.S. Constitution against all Defendants; (2) a § 1983 claim under the Fourteenth Amendment for a violation of procedural due process against all Defendants; (3) a § 1983 claim under the Fourteenth Amendment for a violation of substantive due process against all Defendants; (4) a § 1983 claim under the Fourteenth Amendment for failure to train and/or supervise against Defendant Town of Carbondale and Defendant Eugene Schilling; (5) a claim for civil assault against the Life Care Defendants, Defendant Schilling, and Defendant Michael Zimmerman; (6) a claim for civil battery against the Life Care Defendants, Defendant Schilling

and Defendant Zimmerman; (7) a claim for civil false arrest/imprisonment against the Life Care Defendants, Defendant Schilling and Defendant Zimmerman; (8) a claim for outrageous conduct against the Life Care Defendants, Defendant Schilling, and Defendant Zimmerman; and (9) willful and wonton breach of contract against the Life Care Defendants [#172].[2]

The court entered a Scheduling Order on November 12, 2014 [#39], and the Parties proceeded to exchange discovery requests. In the First Amended Complaint, Plaintiff alleges that the Life Care Defendants "deliberately intended to cause Ms. Meeker's injuries, and acted directly to bring about her injuries." [*Id.* at ¶ 101]. As part of her claim for willful and wonton breach of contract, Ms. Meeker seeks "all damages allowed by law, including but not limited to exemplary and treble damages, as well as the maximum increase of such damages for the continued behavior as allowed by law." [*Id.* at ¶ 243]. To that end, Plaintiff served discovery regarding both the Life Care Defendants' prior conduct of similar drills, and the financial relationship and condition of Defendants. The court has conducted repeated informal discovery conferences related to the adequacy of Defendants' disclosures. [#156, #166, #194].

On October 6, 2015, Defendant LCCA[3] filed a Motion for Protective Order, contending that having to perform a company-wide search of all emails to determine whether responsive emails related to the hostage drills exist was overly burdensome. [#167 at 3-4]. LCCA further asserted that the 2013-2015 LCCA Consolidated Financial Statements that were previously produced constituted the "full financial information" that the court ordered and no further production was necessary because the excluded information related to Variable Interest Entities

---

[2] By Order dated May 5, 2015, the court dismissed the state law claims brought against the individuals—Defendants Baker, Varley, and Holmes—holding that Workers' Compensation benefits were the only remedy available to Plaintiff for injuries caused by co-workers or superiors in the course of employment. [#120].

[3] While referring to itself as the "Life Care Defendants," the Motion for Protective Order appeared to be filed only on behalf of Defendant LCCA, not Defendant CMI.

("VIEs"), whose assets and liabilities, the Life Care Defendants contend, would not be considered the Life Care Defendants' assets for the purposes of punitive damages. [#167, #166]. Plaintiff opposed the requested protective order, arguing that it was willing to limit the search for electronic mail related to the disaster drills to individuals on the safety committee and management employees of those facilities, that LCCA had failed to establish that producing such e-mail was overly burdensome, that the financials of the VIEs were not relevant, and that the court had already ordered the Life Care Defendants to produce such information and LCCA should not be permitted to re-argue relevance at this juncture. [#173]. LCCA replied, arguing that the search to discover whether any responsive emails exist *itself* was unduly burdensome, that the potential for any relevant information was "marginal," and that the Life Care Defendants had already admitted that its facilities perform unannounced emergency disaster drills. [#183 at 5-8]. LCCA further contended that the court already ruled that Plaintiff was not entitled to discovery on this issue, citing the court's order dated July 20, 2015. [*Id.* at 3].

On December 4, 2015, this court issued an Order on three then-pending discovery motions: (1) Defendant Life Care Centers of America, Inc.'s Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) [#167]; (2) Plaintiff's Motion to Compel LCCA Defendants' Discovery Responses Regarding Financial Information Pursuant to Fed. R. Civ. P. 37(a) [#192]; and (3) the Life Care Defendants' Motion to Designate Depositions of Terry Henry and John Van Veen, Jr. as Confidential and Motion to Restrict Access to Document 192 and its Exhibits [#195] filed by the Life Care Defendants. The court ordered, among other things, that the Life Care Defendants "produce organizational charts or other documents sufficient to demonstrate the ownership and management structure of Heritage Park Care Center, including but not limited to Heritage Park Operations, LLC., from 2013 to the present." [#204 at 16]. The court also ordered

the Life Care Defendants to conduct searches of emails for responsive documents for each of the members of the safety committee and the three management employees of each Life Care facility (as identified by Plaintiff by name or title), as well as Jessica Varley and Cathy Ortiz, and specifically for relevant emails about any drill described in [#173-5] as "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray intruder in the building with weapon," and "man with gun hostage situation," and produce any responsive documents no later than December 24, 2015.  [#204 at 12].

The court held a Final Pretrial Conference on February 10, 2016, and a Final Pretrial Order was entered.  [#248, #249].  An eight-day jury trial is set to begin on October 24, 2016. [#257].

## ANALYSIS

The first motion presently before the court is Plaintiff's Motion for Sanctions for LCCA Defendants' Failure to Comply with this Court's Order on Discovery Motions [Doc. 204] Pursuant to Fed. R. Civ. P. 37 (the "Motion for Sanctions").  [#221].  In the Motion for Sanctions, Plaintiff seeks sanctions, including an order awarding Plaintiff her reasonable costs and attorneys' fees, as well as further sanctions as the court deems just and proper pursuant to Fed. R. Civ. P. 37, for the Life Care Defendants' continued failure to produce any not-previously-produced relevant documents in response to the court's orders requiring the Life Care Defendants to produce documents pertaining to the ownership and organizational structure of Heritage Park Care Center.

The second motion presently before the court is Defendants Life Care Centers of America, Inc. and Colorado Medical Investors, LLC's Motion for Extension of Time ("Motion

for Extension of Time"). [#258]. In the Motion for Extension of Time, the Life Care Defendants request an extension of the deadline to comply with the court's December 4, 2015 Discovery Order by at least six months to produce emails for each of the members of the safety committee and the three management employees of each facility where an emergency disaster drill occurred (as identified by Plaintiff by name or title), as well as Jessica Varley and Cathy Ortiz, and specifically, for relevant emails about any drill described . . . as "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray – intruder in the building with weapon," and "man with gun hostage situation." [#258]. The Life Care Defendants argue that this extension is necessary because of the large amounts of time and money necessary to comply with the order due to the large amount of potentially relevant data and the number of locations where the data is located.

## I.     Motion for Sanctions

The court turns first to Plaintiff's Motion for Sanctions. [#221]. In her Motion for Sanctions, Plaintiff argues that the court should enter appropriate sanctions against the Life Care Defendants, including awarding Plaintiff her reasonable costs and attorneys' fees, for the Life Care Defendants' continued failure to produce documents pertaining to the ownership and organizational structure of Heritage Park Care Center.

Pursuant to Fed. R. Civ. P. 37(b)(2), a court may enter sanctions for a party's failure to obey an order of the court. These sanctions may include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b)(2)(C) further provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." As a general rule, the trial court acts with discretion in imposing sanctions under Rule 37. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999).

Plaintiff's Motion for Sanctions comes after a drawn-out dispute between the Parties over this issue of production of documents relating to the ownership and organizational structure of Heritage Park Care Center. As Plaintiff points out, Plaintiff first requested these documents in discovery requests dated June 11, 2015. *See* [#221 at 2]. Since Plaintiff originally requested these documents, the dispute has required the court to convene multiple informal discovery dispute conferences and issue several orders. *See* [#148 at 2 (ordering Defendant LCCA to respond to Plaintiff's second set of discovery requests)]; [#166 at 2 ("Defendants shall produce information reflecting the organizational and corporate structure and relationship, including contracts and/or dissolution papers, between LCCA, CMI, and HPCC, on or before October 8, 2015.")]. In the court's December 4 Order, the court ordered the Life Care Defendants to produce organizational charts or other documents sufficient to demonstrate the ownership and

management structure of Heritage Park Care Center, including but not limited to Heritage Park Operations, LLC, from 2013 to the present, no later than December 11, 2015.  [#204 at 15-16].

Plaintiff contends that the Life Care Defendants never complied with the December 4 Order because they simply re-disclosed previously-produced documents and did not produce certain documents pertaining to the transfer of ownership in the HPCC, including documents referenced by deposition witnesses.  [#221 at 7].  The Life Care Defendants, on the other hand, contend that their disclosures were sufficient to comply with the December 4 Order because the documents that were re-produced, together with 30(b)(6) deposition testimony, are sufficient to demonstrate the ownership and management structure of HPCC.  *See* [#226 at 1-2].  The re-produced documents, which were previously produced on October 8, 2015, include an HPCC ownership structure flow chart, management agreement between Heritage Park Operations and LCCA, CMI's Bill of Sale, Assignment and Transfer of Assets, Memorandum of Lease between CMI and Heritage Park Operations, LLC, and Lease Termination and Memorandum of Lease Termination of Carbondale Medical Investors, LLC and Heritage Park Operations, LLC.  [#226 at 9].  According to the Life Care Defendants, the HPCC ownership structure flow chart, in and of itself, demonstrates the ownership and management structure of HPCC.  [*Id.*].

The court finds that the relevant inquiry into whether the Life Care Defendants have complied with the December 4 Order as it pertains to the organizational documents is an analysis of whether the documents and information produced by the Life Care Defendants is, in fact, *sufficient* to show the ownership and management structure of Heritage Park Care Center. Plaintiff, in large part, focuses her Motion for Sanctions on the premise that there is evidence that there are documents pertaining to the reorganization and change in ownership of HPCC which exist, but have never been produced.  *See, e.g.*, [#221 at 4].  However, the relevant issue to

determine whether the Life Care Defendants should be sanctioned for their purported failure to respond to the December 4 Order is not whether they produced *every* document that exists pertaining to this issue.  Rather, to comply with the court's December 4 Order, the Life Care Defendants were required "to produce organizational charts or other documents *sufficient* to demonstrate the ownership and management structure of Heritage Park Care Center, including but not limited to Heritage Park Operations, LLC., from 2013 to the present."  [#204 at 16 (emphasis added)].

The court finds that the Life Care Defendants have produced documents and deposition testimony sufficient to show the organizational structure of Heritage Park Care Center.  Exhibits 123 and 126 to the deposition of Kelly Falcon, the Vice President of Human Resources for LCCA are organizational charts showing the structure of HPCC before and after the change of ownership.  [#226-4 at 12, 14].  Ms. Falcon also drew a flow chart of the organizational structure and testified regarding the corporate profile for LCCA.  [#226-4 at 16-17].  The court finds that these documents are sufficient to demonstrate the ownership and management structure of Heritage Park Care Center from 2013 to the present.  Accordingly, the court does not find, based on the record before it, that the Life Care Defendants failed to comply with the December 4 Order as it pertains to the HPCC organizational documents.

The court, however, acknowledges Ms. Meeker's concern that the Life Care Defendants are trying to preclude discovery of the interconnectedness of LCCA and CMI.  *See* [#251 at 3]. In the court's December 4 Order, it specifically advised the Life Care Defendants that failure to comply with that order or to engage in discovery in a good faith manner may lead to sanctions, including but not limited to default judgment.  [#204 at 12].  The court issued a similar warning in an earlier Minute Order dated October 1, 2015, when it warned the Life Care Defendants that

they would be subject to sanctions if they represented that certain documents did not exist, but that deposition witnesses subsequently testified to their existence. *See* [#166 at 2]. Should there be any inconsistencies between the Life Care Defendants' disclosures of the organizational and management structure of HPCC and their later testimony or arguments about the same, Plaintiff may find it appropriate to raise such concerns with presiding Judge Daniel who may refer any issue to this Magistrate Judge for recommendation, to the extent he finds it appropriate.

On the basis of the foregoing, the court DENIES Plaintiff's Motion for Sanctions for LCCA Defendants' Failure to Comply with this Court's Order on Discovery Motions [Doc. 204] Pursuant to Fed. R. Civ. P. 37 [#221].

## II.    Motion for Extension of Time

On February 23, 2016, the Life Care Defendants filed a Motion for Extension of Time, in which they request that the court grant an extension of time to comply with its December 4 Order. [#258].

The court's December 4 Order required the Life Care Defendants to conduct searches of emails for responsive documents for each of the members of the safety committee and the three management employees of each facility (as identified by Plaintiff by name or title), as well as Jessica Varley and Cathy Ortiz, and specifically for relevant emails about any drill described in [#173-5] as "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray intruder in the building with weapon," and "man with gun hostage situation," and produce any responsive documents no later than December 24, 2015. [#204 at 12].

On December 23, 2015, the Life Care Defendants filed a Status Report relating to the production of the e-mail searches and production of the search results.  [#216].  The Life Care Defendants stated that they had used the facility chart produced by Plaintiff, [#173-5], to identify 84 drills involving or referring to hostage situations, active shooters, weapons, intruders, code gray, and code black.  [*Id.*].  The Life Care Defendants identified the steps that they had taken to identify the safety committee members and three management employees at the facilities where the 84 drills had taken place, and stated that as of the date of the Status Report, identification was complete for 57 of 84 drills.  The Life Care Defendants stated that they had identified 605 individuals and that they were in the process of planning how to process and collect the data relating to these individuals' emails.  [*Id.*].

On the same date that the Life Care Defendants filed the Status Report, they also filed a motion requesting a 60-day extension of the deadline to comply with the December 4 Order.  [#218].  The court granted the motion for an extension on February 10, 2016, bringing the Life Care Defendants' deadline to respond to the December 4 Order to February 23, 2016.  [#248].  The court informed the Life Care Defendants that no further extensions of this deadline would be granted absent extraordinary circumstances.  *See* [#248 at 1-2].

On February 23, 2016, the Life Care Defendants filed the present Motion for a further extension of the deadline set in the December 4 Order to produce the emails pertaining to the emergency drills.  [#258].  The Life Care Defendants request an extension of "at least six months" from the date of their Motion to comply with the December 4 Order.  [#258 at 3].  Discovery in this case closed six months ago, and the requested extension would mean that the Life Care Defendants would produce what they represent as massive amounts of electronic data on Plaintiff only two months before trial.  This would certainly prejudice Plaintiff, and the court

will not allow the Life Care Defendants' own lack of diligence and good faith in discovery to derail the pending trial.

As grounds for the requested six-month extension, the Life Care Defendants represent that extraordinary circumstances exist because it is impossible for the Life Care Defendants to complete the entire email search by the February 23, 2016 deadline. [#258 at 13]. The Life Care Defendants state that it has taken them over two and a half months to perform email searches for 6 drills, producing approximately 15,700 emails, and that given that amount of time, they anticipate that it will take at least an additional six months to search all 84 drills. [#258 at 4].

The Life Care Defendants are essentially requesting a further extension of the discovery deadline in the Scheduling Order for the limited purpose of producing the documents in question. Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

Here, the court notes that the Life Care Defendants' own discovery tactics brought them to this point where six months after the close of fact discovery and over four months after the court ordered production, they still have not produced the responsive emails pertaining to

hostage taking at Life Care facilities.  On January 16, 2015, Yvonne Bates-King verified the Life Care Defendants' discovery response that stated "the only hostage drill that has ever taken place at any LCCA facility was that occurring at the Carbondale, Colorado facility on October 16, 2013." [#173-7 at 3, 14].  These discovery responses were also signed by counsel of record pursuant to Rule 26(g) of the Federal Rules of Civil Procedure. [*Id.* at 12].  The record reflects a dispute on this topic between the Parties dating back as early as March 2015, when Plaintiff filed a motion to compel that included a request for the court to compel the Life Care Defendants to produce documents pertaining to other "emergency preparedness" or "disaster" drills conducted at LCCA's facilities and inter-facility communications regarding those drills. *See* [#73].  This court issued an Order on July 20, 2015, finding Plaintiff's interrogatory and requests for production on this topic overbroad to the extent that they would encompass a broad range of drills over the span of the country and a decade in time that arguably had nothing to do with Plaintiff's claims. *See* [#141 at 9-10].  Nevertheless, the court found that to the extent that Ms. Meeker properly reframed the discovery requests and the Life Care Defendants' responses were still perceived to be inadequate, Plaintiff could again seek court intervention. [*Id.* at 10].

On September 3, 2015, the court held an informal discovery conference regarding Plaintiff's discovery requests for production of financial documents and the documents related to unannounced disaster drills at all LCCA facilities.  [#157].  The Life Care Defendants represented during that conference that they were unaware of the number of unannounced drills at the Life Care facilities from 2010 to present. *See* [#157 at 2].  Thus, despite Ms. Meeker's discovery requests pertaining to this topic and the related motions practice, it was plain that the Life Care Defendants had not taken even cursory steps to investigate the existence of and produce responsive information on this topic at that time.  During the September 3 discovery

conference, the court ordered the Life Care Defendants to take reasonable steps to determine the number of unannounced drills that would be the subject of discovery.

Following the September 3 discovery conference, the court held another informal discovery conference on October 1, 2015.  [#166].  During the October 1 conference, the Life Care Defendants stated that they agreed to produce documents pertaining to unannounced hostage and active shooter drills, but did not agree to produce documents pertaining to bomb threats and intruder drills.  *See* [#166 at 1].  The court ordered production of those documents on or before October 8, 2015.  [*Id.* at 2].  As Plaintiff noted in her moving papers, the Life Care Defendants were on notice as of October 1, 2015 that information related to other hostage drills was potentially discoverable in this action.

On October 6, 2015, Defendant LCCA[4] filed a Motion for Protective Order, contending that having to perform a company-wide search of all emails to determine whether responsive emails related to the disaster drills exist was overly burdensome.  [#167 at 3-4].  LCCA also argued in its reply in support of its motion that the search to discover whether any responsive emails exist *itself* was unduly burdensome, that the potential for any relevant information was "marginal," and that the Life Care Defendants had already admitted that its facilities perform unannounced emergency disaster drills.  [#183 at 5-8].  LCCA further contended that the court already ruled that Plaintiff was not entitled to discovery on this issue, citing the court's order dated July 20, 2015.  [*Id.* at 3].  The court's December 4 Order addressed the motion for a protective order and ordered the Life Care Defendants to conduct searches of emails for responsive documents for each of the members of the safety committee and the three management employees of each facility (as identified by Plaintiff by name or title), as well as

---

[4] While referring to itself as the "Life Care Defendants," the Motion for Protective Order appeared to be filed only on behalf of Defendant LCCA, not Defendant CMI.

Jessica Varley and Cathy Ortiz, and specifically for relevant emails about any drill described in [#173-5] as "hostage situation," "hostage," "active shooter hostage taking," "hostage taking – person came in with weapon," "hostage/active shooter," "hostage taking person with a weapon or armed robbery," "code gray – intruder in the building with weapon," and "man with gun hostage situation," and produce any responsive documents no later than December 24, 2015. [#204 at 12].

At this point, the discovery requests seeking information about hostage drills performed by the Life Care Defendants have been outstanding since at least October 1, 2015.  Had the Life Care Defendants identified these other drills earlier, rather than simply asserting that the Heritage Park incident was the "only" hostage drill, the court could have used its judicial resources expended in the informal discovery conferences discussing and evaluating concrete facts about the burdens and benefits of the requested discovery, instead of generalities.  Instead, the Life Care Defendants chose to attempt to avoid any searching altogether, thereby creating the current exigency. The Life Care Defendants have essentially forced the court's hand into granting at least a partial extension of the deadline to produce the hostage drill emails.  Even to date, with this latest motion, it is unclear whether the Life Care Defendants have asked certain identified custodians, such as Jessica Varley and Robert Baker (who were once defendants in this action) or Cathy Ortiz, to search their active email accounts for responsive documents.

In the interest of proportionality as set forth in Rule 26(b)(1) and consistent with the admonition of Rule 1 to apply the Rules of Civil Procedure to secure the just, speedy, and inexpensive adjudication of disputes, the court **GRANTS IN PART** the requested extension, **RESERVES** ruling on the issue of sanctions, and **ORDERS** as follows:

(1)     The Life Care Defendants will identify the specific drills for which the searches have been initiated and completed no later than **April 18, 2016**;

(2)     The Life Care Defendants will disclose to Plaintiff's counsel all manner by which they have "narrowed the search term criteria" and are employing "alternative methods to complete this review more expeditiously" no later than **April 18, 2016**;

(3)     The Life Care Defendants are ordered to produce all non-privileged documents from the completed searches (at least 6 are identified) and documents collected from Jessica Varley and Cathy Ortiz that hit on the relevant search terms in searchable, electronic format,[5] regardless of whether the Life Care Defendants believe these documents are responsive, no later than **April 25, 2016**.   The Life Care Defendants are further ordered to indicate in their production which specific documents out of the documents identified in the searches the Life Care Defendants believe are responsive;

(4)     Plaintiff and the Life Care Defendants will file simultaneous briefs, limited to ten pages each, addressing whether further production of documents pertaining to the hostage drills is appropriate no later than **April 29, 2016**;

(6)     Plaintiff and the Life Care Defendants will appear in person for an evidentiary hearing, which will be set for two hours, on the issues of further production and Plaintiff's Motion for Sanctions [#262, filed March 18, 2016] on **May 12, 2016 at 10:00 a.m.**   To the extent that any party relies on out-of-court testimony in its briefing to support its position on further production or sanctions, the witness providing such testimony will appear in person at the May 12 evidentiary hearing and may be subject to cross-examination; and

---

[5] The Parties will meet and confer about, and resolve any issues regarding, the appropriate electronic format no later than April 18, 2016, or will alert the court of any disputes regarding the format as of that date.

(7)     The issue of sanctions will be **RESERVED** for consideration in conjunction with Plaintiff's Motion for Sanctions [#262, filed March 18, 2016].

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion for Sanctions for LCCA Defendants' Failure to Comply with this Court's Order on Discovery Motions [Doc. 204] Pursuant to Fed. R. Civ. P. 37 [#221] is **DENIED**;

(2)     Defendants Life Care Centers of America, Inc. and Colorado Medical Investors, LLC's Motion for Extension of Time [#258] is **GRANTED IN PART** and **RESERVED IN PART**, consistent with the direction as stated above;

(3)     An evidentiary hearing on the issue of further production and on Plaintiff's Motion for Sanctions [#262] will be held on **May 12, 2016 at 10:00 a.m.**

DATED:  April 11, 2016                               BY THE COURT:


                                                     s/ Nina Y. Wang
                                                     United States Magistrate Judge

17